137 Cal.App.3d 282 (1982)
187 Cal. Rptr. 1
THE STATE OF CALIFORNIA ex rel. DEPARTMENT OF REHABILITATION et al., Petitioners,
v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent; CITY OF OAKLAND, Real Party in Interest.
Docket No. A016948.
Court of Appeals of California, First District, Division Four.
November 9, 1982.
*284 COUNSEL
George Deukmejian, Attorney General, Michael Franchetti, Chief Deputy Attorney General, Willard Shank, Chief Assistant Attorney General, James Schwartz and Tiffany Franchetti, Deputy Attorneys General, for Petitioners.
No appearance for Respondent.
Richard E. Winnie, City Attorney, and Susan Watkins, Assistant City Attorney, for Real Party in Interest.
OPINION
CHRISTIAN, J.
The State of California, through the Department of Rehabilitation, and the Attorney General of the State of California seek a writ directing respondent court to grant a motion by petitioners for judgment on the pleadings. We grant the writ.
Keith Kellum, a physically handicapped person, sued the Silver Dragon Restaurant, Inc., alleging failure to provide at a place of public accommodation restroom facilities and an access ramp for the handicapped. (Health & Saf. Code, § 19955 et seq. and Civ. Code, § 54 et seq.) The Silver Dragon settled with Kellum but cross-complained for indemnity against the architects who designed the building, the contractor, and the City of Oakland, alleging that each cross-defendant had negligently failed to advise the restaurant management of handicap accessibility requirements. Cross-complainants further alleged that the city had been under a mandatory duty to prevent the construction of buildings which failed to meet these requirements.
Oakland answered and cross-complained against the state and the Attorney General, alleging that the Department of Rehabilitation knew that the city was not exacting compliance with the handicap access requirements of the Health and Safety Code in issuing building permits and failed to advise the city to refuse to issue those building permits. The city alleged that the Attorney General also knew that the city was not denying the building permits and that the Attorney General had neglected official duty by not informing the city of its obligation to refuse to issue building permits for structures not meeting standards for accommodation of handicapped persons.
The department and the Attorney General answered and moved for judgment on the pleadings. Respondent court denied the motion, and the present writ proceeding ensued.
*285 (1) Mandate will lie in appropriate cases to challenge an order made at the pleading stage of an action. (Babb v. Superior Court (1971) 3 Cal.3d 841, 851 [92 Cal. Rptr. 179, 479 P.2d 379].) We are informed that other similar lawsuits are pending; no case law on issues argued here exists for the guidance of trial courts. Review by extraordinary relief is therefore appropriate. (See People v. Superior Court (1970) 13 Cal. App.3d 672, 676 [91 Cal. Rptr. 651].)
Action Against the Department of Rehabilitation. In the absence of a statutory assumption of liability, "[a] public entity is not liable for an injury, ... aris[ing] out of an act or omission of the public entity or a public employee or any other person." (Gov. Code, § 815.) Such an assumption of liability is provided for by Government Code section 815.6: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." (2a) The City of Oakland alleges that the Department of Rehabilitation breached such a mandatory duty when it failed in the present instance to meet its statutory responsibilities of "educating the public and working with officials of cities, counties, municipalities, and other political subdivisions, private architects, designers, planners, and other interested parties in order to encourage and help them make all buildings, facilities and improved areas accessible to and usable by handicapped persons for purposes of rehabilitation, employment, business, recreation, and all other aspects of normal living." (Gov. Code, § 4455.)
This enactment does not impose a mandatory duty to inform city officers of the provisions of Health and Safety Code requiring them to enforce the handicap accessibility requirements. (See Health & Saf. Code, § 19958.)[1] The mandatory duty is to "work with" public officers. The specifics of how the department is to work with public officials are not set forth in the section. Oakland does not allege that the department failed to "work with" it but failed *286 to inform it of state law. That specific duty is not imposed upon the department. (Compare Morris v. County of Marin (1977) 18 Cal.3d 901, 906 [136 Cal. Rptr. 251, 559 P.2d 606].) (3) Indeed, public entities are presumed to have knowlege of legislative enactments. (Ramos v. County of Madera (1971) 4 Cal.3d 685, 696 [94 Cal. Rptr. 421, 484 P.2d 93].)
(2b) Even if the department had a mandatory duty to inform the city of its duties with respect to handicap access, liability for damages could not be imposed in the absence of a mandatory duty "imposed by an enactment that is designed to protect against the risk of a particular kind of injury." (Gov. Code, § 815.6.) This situation here is analogous to that in Smith v. Alameda County Social Service Agency (1979) 90 Cal. App.3d 929 [153 Cal. Rptr. 712]. There a statute required the State Department of Social Welfare to establish and administer a program to encourage the adoption of "hard-to-place" children. A demurrer was properly sustained to a complaint by a child who sought damages from the agency for failing to find him an adoptive home. "[T]hese provisions evince a legislative intent to maximize the chances of adoption for hard-to-place children and that the regulations impose obligations on the respondent agency.... Government Code section 815.6, ... `imposes liability for failure to discharge only such "mandatory duty" as is "imposed by an enactment that is designed to protect against the risk of a particular kind of injury."' (60 Cal. App.3d [814] at p. 826 [131 Cal. Rptr. 854], italics added.) The statutory provisions before us cannot reasonably be construed as designed to `protect' hard-to-place children from the `injury' of not being adopted. Their purpose is to encourage and promote the adoption of as many such children as possible, but certainly not to impose on local agencies a mandatory duty to secure the adoption of each such child. Society has a stake in furthering adoptions, but it does not follow that this interest is advanced by transmuting statutory provisions for adoption programs into springboards for damage actions." (90 Cal. App.3d at p. 940.)
Here the purpose of section 4455 is to secure the access of handicapped persons to places of public accommodation. It cannot be reasonably argued that any part of this purpose is to protect cities from the risk of lawsuits brought by the handicapped for failure to enforce the law.
Action Against the Attorney General. The cause of action against the Attorney General is also based upon alleged failure to inform the city of its own duty to enforce the laws relating to access to the handicapped in public buildings. The mandatory duty is allegedly imposed upon the Attorney General by article V, section 13, of the California Constitution: "... the Attorney General shall be the chief law officer of the State. It shall be the duty of the Attorney General to see that the laws of the State are uniformly and adequately enforced. *287 ... Whenever in the opinion of the Attorney General any law of the State is not being adequately enforced in any county, it shall be the duty of the Attorney General to prosecute any violations of law of which the superior court shall have jurisdiction, and in such cases the Attorney General shall have all the powers of a district attorney." (Italics added.)
The language requiring action "whenever in the opinion of the Attorney General any law of the State is not being adequately enforced in any county" modifies the phrase before it and indicates that this section of the Constitution imposes upon the Attorney General a discretionary duty to enforce the law. (Cf. Taliaferro v. Locke (1960) 182 Cal. App.2d 752, 757 [4 Cal. Rptr. 223]; see Morris v. County of Marin, supra, 18 Cal.3d 901, 910-911, fn. 6.)
The Constitution imposes no mandatory duty to enforce the subject laws. Consistent with that conclusion, Health and Safety Code section 19958 imposes upon the city a duty to enforce the access requirements. The Attorney General is given a discretionary role in section 19958.5 which provides that "... the Department of Rehabilitation acting through the Attorney General, or the Attorney General may bring an action to enjoin a violation of this part." Because the functions of the Attorney General with respect to the statute are discretionary, he enjoys immunity from liability for an injury caused by failure to enforce that law. (Gov. Code, § 821; see Morris v. County of Marin, supra, 18 Cal.3d at p. 916.)
A writ will issue commanding respondent court to render judgment on the pleadings as prayed.
Caldecott, P.J., and Poche, J., concurred.
NOTES
[1] Health and Safety Code section 19958: "The building department of every city, county, or city and county shall enforce this part within the territorial area of its city, county, or city and county. The responsibility for enforcing Chapter 7 (commencing with Section 4450) of Division 5 of Title 1 of the Government Code in its application under this part shall be by such building department within the territorial area of its city, county, or city and county. [¶] `Building department' means the department, bureau, or officer charged with the enforcement of laws or ordinances regulating the erection or construction, or both the erection and construction, of buildings." (Added by Stats. 1969, ch. 1560, § 1, p. 3166, operative July 1, 1970.)

"This part" refers to part 5.5 of the Health and Safety Code, "Access to Public Accommodations by Physically Handicapped Persons." Part 5.5 was added to the Health and Safety Code in 1969, and its purpose "is to insure that public accommodations ... constructed ... with private funds" would adhere to the provisions of the Government Code concerning the construction of accommodations constructed with public funds. (Gov. Code, § 4450 et seq.)